UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Peter Kelly,<br><br>         Plaintiff,<br><br>-against-<br><br>Communications Workers of America, AFL-CIO and Verizon New York Inc.,<br><br>         Defendants. | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:_____<br>DATE FILED: 07/25/2023<br><br>1:22-cv-10923 (GHW) (SDA)<br><br>**REPORT AND RECOMMENDATION** |

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE GREGORY H. WOODS, UNITED STATES DISTRICT JUDGE:**

Pending before the Court are motions by Defendants Communications Workers of America, AFL-CIO ("CWA" or the "Union") and Verizon New York Inc. ("Verizon") (together, "Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an Order dismissing the Amended Complaint of Plaintiff Peter Kelly ("Plaintiff" or "Kelly"). (CWA Mot. to Dismiss, ECF No. 27; Verizon Mot. to Dismiss, ECF No. 24.) For the reasons set forth below, I respectfully recommend that Defendants' motions be DENIED.

**FACTUAL ALLEGATIONS[1]**

Plaintiff, a Caucasian male, was employed by Verizon as a Field Technician from February 21, 2000 until May 19, 2021. (Am. Compl., ECF No. 22, ¶¶ 5, 16, 23, 24.) During this time, Plaintiff was a member of the Union, which was the sole and exclusive bargaining agent of all Field Technicians employed by Verizon. (*Id.* ¶¶ 10-11.) Verizon and the Union are parties to a collective

---

[1] For purposes of the pending motion to dismiss, the Court accepts Plaintiff's factual allegations as true and draws all reasonable inferences in his favor. *See City of Providence v. BATS Glob. Mkts., Inc.*, 878 F.3d 36, 48 (2d Cir. 2017).

bargaining agreement (the "CBA") that governs the terms and conditions of Union members' employment. (*Id*. ¶ 12.) The CBA provides that Plaintiff could be terminated from his employment only for cause and includes a grievance and arbitration procedure which provides the exclusive means of enforcing the terms and conditions of the CBA. (*Id*. ¶¶ 13-14.)

On April 6, 2021, when working in the field, not on Verizon property, and during his lunch break, and while sitting on a park bench, Plaintiff took a personal call during which he discussed the news that rapper DMX had been hospitalized and, in discussing DMX's music, used the word "nigga." (Am. Compl. ¶25.) Unbeknownst to Plaintiff, he inadvertently had answered a call on his company cellular phone, and a Verizon employee who listened to his private call for approximately forty-five seconds overheard him use the word "nigga." (*Id*.)

On April 23, 2021, Verizon suspended Plaintiff pending an investigation for discrimination and harassment. (Am. Compl. ¶ 30.) On May 10, 2021, Plaintiff was placed on a ten-day suspension pending dismissal and then was informed that he officially would be terminated by Verizon effective May 19, 2021, for violating Verizon's discrimination and harassment policy, the purpose of which was to maintain a respectful, safe and professional workplace, and a work environment free from abusive behavior. (*Id*. ¶ 31; *see also Id*. ¶ 26.)

Plaintiff alleges that many non-Caucasian employees routinely used words like "bitch," "cunt," "nigger," "nigga," "kike," and "spic" in the workplace without being reprimanded or disciplined in any way. (Am. Compl. ¶¶ 33-36, 42-44.) Plaintiff also alleges that other employees violated Verizon's zero-tolerance policy against violence and never were disciplined for it. (*Id*. ¶¶ 37-40.)

Plaintiff grieved the termination of his employment. (Am. Compl. ¶ 45.) Plaintiff alleges that Union officials understood that Verizon's termination of Plaintiff's employment was without cause, but the Union refused to take Plaintiff's meritorious grievance to arbitration. (*Id*. ¶¶ 46-47.) Plaintiff further alleges that Dennis G. Trainor, the Union's Vice President, District 1, informed Plaintiff that the Union officials believed that arbitrating Plaintiff's grievance would have a negative effect upon the Union's reputation with its members and employees because it would be enforcing the rights of a white man who used the word "nigga" and, therefore, that race was a motivating factor in the Union's decision. (*Id*. ¶¶ 48-49.) Plaintiff also alleges that the Union has arbitrated the grievances of the very few African American employees whom Verizon chose to discipline for using the word "nigger" in the workplace. (*Id*. ¶ 50.)

Plaintiff appealed the Union's refusal to take his meritorious grievance to arbitration. (Am. Compl. ¶ 51.) The Union denied his appeal on August 15, 2022. (*Id*. ¶ 53; *see also* Stark Aff. Ex. 2, ECF No. 30-3.) Plaintiff alleges that, but for the Union's failure to arbitrate, he would have been restored to work. (Am. Compl. ¶ 54.)

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding a motion to dismiss, the Court "must accept as true all of the factual allegations contained in a complaint[,]" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted); *see also Nguyen v. FXCM Inc.*, 364 F. Supp. 3d 227, 239 (S.D.N.Y. 2019) ("The Court need not accept as true, 'legal

3

conclusions, deductions, or opinions couched as factual allegations.'") (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)). When deciding a Rule 12(b)(6) motion, a district court may consider, in addition to the factual allegations in the Complaint, "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

"A statute of limitations affirmative defense normally cannot be decided on a motion to dismiss." *Essex Cap. Corp. v. Garipalli*, No. 17-CV-06347 (JFK), 2018 WL 6618388, at *2 (S.D.N.Y. Dec. 18, 2018). However, "[w]here the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989); *see also McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) ("[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."). "Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter." *Ghartey*, 869 F.2d at 162.

## DISCUSSION

Plaintiff alleges that Verizon breached its collective bargaining agreement with the Union by terminating his employment without cause (First Count); that the Union unlawfully discriminated against him with respect to the terms and conditions of his employment in violation of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(b) (Second Count); and

that the Union breached its duty of fair representation owed to Plaintiff (Third Count). (Am. Compl. ¶¶ 55-74.)

Here, Plaintiff, who is represented by counsel, refers only generally to § 8(b) of the NLRA in the Second Count of the Amended Complaint and does not set forth the legal basis for the First and Third Counts. The Court construes Plaintiff's allegations together as asserting a "hybrid" claim under Section 301 of the Labor Management Relations Act ("LMRA")[2] and the Union's duty of fair representation under the NLRA.[3] *See Yearwood v. New York Presbyterian Hosp.*, No. 12-CV-06985 (PKC), 2013 WL 4713793, at *2 (S.D.N.Y. Aug. 20, 2013).

"In order to provide individual employees with recourse when a union breaches its duty of fair representation in a grievance or arbitration proceeding, the Supreme Court has held that an employee may bring suit against both the union and the employer." *Arnold,* 2009 WL 4823906, at *3 (quoting *Carrion v. Enterprise Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 33 (2d Cir. 2000)). Such a suit is known as "a hybrid § 301/duty of fair representation claim." *Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*, 415 F.3d 279, 282 (2d Cir. 2005); *see also DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983).

To prevail on a hybrid § 301/duty of fair representation claim, a plaintiff "must demonstrate both (1) that [his employer] breached its collective bargaining agreement and (2) that [the union] breached its duty of fair representation." *Sanozky,* 415 F.3d at 282. The plaintiff

---

[2] Section 301 of the LMRA provides a remedy for "violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(c).

[3] "The 'duty of fair representation is implied from § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a).'" *Arnold v. 1199 SEIU*, No. 09-CV-05576 (DLC), 2009 WL 4823906, at *3 (S.D.N.Y. Dec. 15, 2009), *aff'd*, 420 F. App'x 48 (2d Cir. 2011) (quoting *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 179 n.3 (2d Cir. 2001)).

"must further establish that any damages he suffered were caused by the union's breach." *Sanozky,* 415 F.3d at 283 (citing *Spellacy v. Airline Pilots Ass'n Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)).

Defendants argue that Plaintiff fails to allege a breach of the duty of fair representation claim and fails to state a claim that Verizon breached the CBA.[4] (CWA Mem. at 4-8; Verizon Mem. at 6-7.) The Court considers each of these arguments in turn.

### I. Breach Of The Duty Of Fair Representation

The Court first considers whether Plaintiff plausibly has alleged that the Union breached its duty of fair representation. *See Garnes v. Pritchard Indus., Inc.*, No. 20-CV-03843 (PAE) (SLC), 2023 WL 3980693, at *13 (S.D.N.Y. May 23, 2023), *report and recommendation adopted*, 2023 WL 3977882 (S.D.N.Y. June 13, 2023) ("Proof of the 'Union's breach is a prerequisite to consideration of the merits of plaintiff's claim against' the employer.") (quoting *Young v. U.S. Postal Serv.,* 907 F.2d 305, 307 (2d Cir. 1990)).

"[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Sanozky,* 415 F.3d at 282

---

[4] In its moving memorandum, the Union also argues that Plaintiff fails to allege a timely duty of fair representation claim. (*See* CWA Mem. at 3-4.) "The statute of limitations for a claim of breach of the duty of fair representation is six months, and it begins when the plaintiff 'knew or reasonably should have known that such a breach' had occurred." *Peralta v. 32BJ SEIU*, No. 21-01638, 2022 WL 792164, at *1 (2d Cir. Mar. 16, 2022) (quoting *Kalyanaram v. Am. Ass'n of Univ. Professors at the N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 46 (2d Cir. 2014)). The Union faults Plaintiff for failing to allege that his claim is timely, but as set forth above, the statute of limitations is an affirmative defense that must appear on the face of the complaint and Plaintiff was not required to plead that his case was timely filed. *See Clinton v. Houston*, No. 22-CV-10188 (LTS), 2023 WL 2758433, at *2 (S.D.N.Y. Apr. 3, 2023) ("Because the failure to file an action within the limitations period is an affirmative defense, a plaintiff is generally not required to plead that the case is timely filed.") (citing *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007)). In any event, in opposition Plaintiff submits a copy of the August 15, 2022 letter from the Union denying his appeal. (Stark Aff. Ex. 2.) Accordingly, his claim is timely and Defendants do not argue otherwise in reply.

6

(quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998)). "This duty applies to a union's representation of an employee during the grievance process following an employee's termination." *Arnold*, 2009 WL 4823906, at *3 (citing *Wilder v. GL Bus Lines*, 258 F.3d 126, 129 (2d Cir. 2001)). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Sanozky,* 415 F.3d at 282-83 (quoting *Airline Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991). "A union acts discriminatorily where 'substantial evidence' indicates that it engaged in discrimination that was 'intentional, severe, and unrelated to legitimate union objectives.'" *Garnes*, 2023 WL 3980693, at *13 (quoting *Vaughn v. Airline Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010)). "A union acts in bad faith only if it acts fraudulently, deceitfully, or dishonestly." *Id*. (citing *White*, 237 F.3d at 179).

"Although 'a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion,' members 'do not have an absolute right to have their grievances taken to arbitration.'" *Arnold*, 2009 WL 4823906, at *3 (quoting *Spellacy,* 156 F.3d at 128 (2d Cir. 1998)). "[T]he duty of fair representation is not breached where the union fails to process a meritless grievance," *id*. (quoting *Cruz v. Local Union No. 3 of Int'l. Bhd. of Elec. Workers,* 34 F.3d 1148, 1153-54 (2d Cir. 1994)), "because 'a union must be allowed to exercise reasonable discretion as to how it can best satisfy the interests of the individual as well as the interests of the collective unit.'" *Id*. (quoting *Pyzynski v. N.Y. Cent. Ry. Co.,* 421 F.2d 854, 864 (2d Cir. 1970)).

Plaintiff alleges that Union officials understood that Verizon's termination of Plaintiff was without cause, but that the Union refused to take his meritorious grievance to arbitration and that his race was a motivating factor in its decision. (Am. Compl. ¶¶ 46-52.) In particular, Plaintiff

alleges that "Dennis G. Trainor, the Union's Vice President, District 1, informed Plaintiff that the Union officials believed that arbitrating Plaintiff's grievance would have a negative effect upon the Union's reputation with its members and employees because it would be enforcing the rights of a white man who used the word 'nigga.'" (*Id*. ¶ 48.) Plaintiff further alleges that the Union did arbitrate the grievances of "the very few African American employees" who were disciplined for using the n-word in the workplace. (*Id*. ¶ 50.)

    The Union argues that "Plaintiff ignores the fact that he was terminated for using a commonly known racial slur" and that "[s]ince Plaintiff made race an issue when he used a racial slur, the Union had a lawful basis to balance the racial sensitivities involved." (CWA Mem. at 4.) However, taking Plaintiff's allegations as true, he used the word in a non-pejorative way under circumstances that he contends did not violate Verizon's Code of Conduct and, therefore, did not constitute cause for his termination under the CBA. (Am. Compl. ¶¶ 25-29.) Moreover, Plaintiff plausibly alleges that the Union's decision not to arbitrate his claim was not due to the Union's view that his claim lacked merit, but because the Union was worried about the optics of defending Plaintiff's conduct, which undoubtedly goes against longstanding social norms. Certainly, "many people, white and black alike, disapprove of a white person saying [the n-word] under virtually any circumstance." *Burlington v. News Corp.*, 759 F. Supp. 2d 580, 597 (E.D. Pa. 2010) (quoting Randall Kennedy, *Nigger: The Strange Career of a Troublesome Word* 105-08 (First Vintage Books ed. 2003)). Nonetheless, a desire to conform with social norms does not automatically insulate the Union's decision. *Cf. Burlington*, 759 F. Supp. at 597 (finding employer could be liable under Title VII for enforcing or condoning the social norm that it is acceptable for

8

African Americans to say n-word but not whites since doing so would require determination that it was "good" race-based social norm that justified departure from text of statute).

It may be, as Defendants assert, that further development of the record reveals that the Union reasonably determined that Plaintiff's claim lacked merit and/or that its decision not to arbitrate its claim was based on legitimate union objectives. (*See*, *e.g.*, CWA Mem. at 7; Verizon Reply Mem. at 2.) However, taking Plaintiff's allegations as true, and drawing all reasonable inferences in his favor, the Court cannot say at this early stage of the proceeding that Plaintiff's claim that the Union acted discriminatorily in deciding not to take his grievance to arbitration is implausible.

"Establishing that the union's actions were sufficiently arbitrary, discriminatory or in bad faith, is only the first step toward proving a fair representation claim." *Spellacy*, 156 F.3d at 126. Plaintiff also must demonstrate a causal connection between the union's wrongful conduct and his injury. *See id*. Plaintiff alleges that, but for the Union's refusal the arbitrate Plaintiff's grievance, Plaintiff would have been restored to work and that the Union's breach caused him damages. (Am. Compl. ¶¶ 54, 68.) These allegations are sufficient to survive a motion to dismiss. *See Torres v. United Serv. Workers Union Loc. 74*, No. 13-CV-06864 (JS) (SIL), 2014 WL 4805050, at *5 (E.D.N.Y. Sept. 26, 2014) (finding, at 12(b)(6) stage, that plaintiff "only needs to plead a causal connection" to satisfy second element of hybrid § 301/duty of fair representation claim).

II.     **Breach Of The CBA**

Defendants also argue that Plaintiff fails to plausibly allege that Verizon breached the CBA, such that his hybrid § 301/duty of fair representation claim should be dismissed. (Verizon Mem. at 7 n.5; CWA Reply Mem. at 1; Verizon Reply Mem. at 3-6.) Plaintiff alleges that Verizon

9

breached the CBA by terminating his employment without cause because he did not violate Verizon's Code of Conduct.[5] (Am. Compl. ¶¶ 13, 60-61; Pl.'s Opp. Mem. at 9.) Verizon argues that Plaintiff admits to uttering a comment that "undoubtedly violated Verizon's zero-tolerance discrimination and harassment policy and provided sufficient 'cause' grounds for the company to terminate Plaintiff's employment." (Verizon Mem. at 7 n.5.) However, drawing all reasonable inferences in Plaintiff's favor, Plaintiff plausibly alleges that he did not violate the Code of Conduct and therefore, that his termination was without cause and constituted a breach of the CBA. *See Yearwood*, 2013 WL 4713793, at *3 (denying motion to dismiss hybrid claim when plaintiff alleged that, because he was not engaging in criminal activity as alleged, his termination was without cause and constituted a breach of the collective bargaining agreement).[6]

---

[5] Although neither side has submitted a copy of the CBA, both sides appear to agree that a violation of the Code of Conduct would constitute cause under the relevant provisions of the CBA.

[6] Plaintiff also argues that Verizon breached the CBA by inconsistently enforcing its rules in a discriminatory way. (*See* Pl.'s Opp. Mem. at 10; *see also* Verizon Reply Mem. at 5-6.) However, although Plaintiff alleges that he was treated differently from other employees based on his race (Am. Compl. ¶¶ 33-44), he does not specifically allege a violation of the CBA on that basis. *Cf. Horton Automatics v. Indus. Div. of Commc'ns Workers of Am.*, 506 F. App'x 253, 256 (5th Cir. 2013) (arbitrator's consideration of whether employer had applied discipline consistently in similar situations exceeded authority under relevant provision of collective bargaining for determining whether company had cause for disciplinary action)*.*

**CONCLUSION**

For the foregoing reasons, I respectfully recommend that Defendants' motions to dismiss be DENIED.

Dated:   New York, New York
         July 25, 2023

_____
**STEWART D. AARON**
**United States Magistrate Judge**

\*       \*       \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Woods.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).

11