# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---

PETER KELLY

                      Plaintiff,

      -against-                  Case No.: 22-cv-10923 (JGLC) (SDA)

COMMUNICATION WORKERS OF AMERICA, AFL-CIO and VERIZON NEW YORK, INC.

                      Defendants.

---

## DEFENDANT VERIZON NEW YORK, INC.'S OBJECTIONS TO MAGISTRATE JUDGE AARON'S REPORT AND RECOMMENDATION

JACKSON LEWIS P.C.
*ATTORNEYS FOR DEFENDANT*
*VERIZON NEW YORK, INC.*
666 Third Avenue, 28th Floor
New York, New York 10017
(212) 545-4000

Attorneys of record:
    Ryan Chapoteau, Esq.
    Cliff LaFemina, Esq

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii - iii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ................................................................................................................................ 3

     POINT I

     STANDARD OF REVIEW ................................................................................................ 3

     POINT II

     VERIZON'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S NYSHRL
     RACE CLAIM SHOULD HAVE BEEN GRANTED . ........................................................ 5

          A.    A Reasonable Jury Could Not Find That Plaintiff Identified Similarly Situated
                Employees Whom He Was Treated "Less Well" Than. ........................................ 5

                1.    The R&R Contradicts Its Own Finding That Ronald Williams Is Not
                      Similarly Situated to Plaintiff. ..................................................................... 6

                2.    The R&R Similarly Concedes That Carlton Evans Is Not Similarly
                      Situated To Plaintiff.. ................................................................................... 7

          B.    A Reasonable Jury Could Not Find That Verizon's Decision To Terminate
                Plaintiff's Employment Was Based On Race Or That Verizon Inconsistently
                Enforces Its "Zero-Tolerance" Policy Because There Is No Admissible
                Evidence In Support of Plaintiff's Theory ............................................................. 8

CONCLUSION .......................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Broich v. Inc. Vill. of Southampton,
    462 F. App'x 39 (2d Cir. 2012) ..............................................................................................5

Caldarola v. Town of Smithtown,
    No. 09-CV-272 (SJF)(AKT), 2011 U.S. Dist. LEXIS 37280 (E.D.N.Y. Apr. 4,
    2011) .......................................................................................................................................4

Cespedes v. Coughlin,
    956 F. Supp. 454 (S.D.N.Y. 1997) ....................................................................................3, 4

D'Amico v. City of N.Y.,
    132 F.3d 145 (2d Cir. 1998)...................................................................................................9

Grassia v. Scully,
    892 F.2d 16 (2d Cir. 1989).....................................................................................................4

Henvill v. Metro. Transp. Auth.,
    No. 22-2731-cv, 2023 U.S. App. LEXIS 29479 (2d Cir. Nov. 6, 2023) .................................3

Idlisan v. Mt. Sinai Med. Ctr.,
    No. 12-cv-8935 (PAC)(RLE), 2015 U.S. Dist. LEXIS 3241 (S.D.N.Y. Jan. 9,
    2015) .......................................................................................................................................4

James v. RD Am., LLC,
    No. 3:16-cv-1445 (VAB), 2019 U.S. Dist. LEXIS 34394 (D. Conn. Mar. 5,
    2019) ................................................................................................................................9, 11

LLC v. Doe 3,
    604 F.3d 110 (2d Cir. 2010)...................................................................................................4

Morgan v. Cnty. of Nassau,
    No. 13-CV-06524 (JMA)(GRB), 2017 U.S. Dist. LEXIS 22992 (E.D.N.Y.
    Feb. 17, 2017) ......................................................................................................................12

O'Neill v. Newburgh Enlarged City Sch. Dist.,
    No. 24-2007-cv, 2025 U.S. App. LEXIS 13338 (2d Cir. June 2, 2025)..............................7, 8

Patton v. Ford Motor Co.,
    No. 14-CV-0308-RJA-HBS, 2017 U.S. Dist. LEXIS 76148 (W.D.N.Y. May
    18, 2017) .................................................................................................................................4

Schwapp v. Town of Avon,
    118 F.3d 106 (2d Cir. 1997)..........................................................................................9, 11

United States v. Raddatz,
    447 U.S. 667 (1980)................................................................................................................4

**Statutes**

28 U.S.C. § 636......................................................................................................................................4

**Rules**

Fed. R. Civ. P. 56..................................................................................................................................9

Fed. R. Civ. P. 72..................................................................................................................................4

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1), Verizon New York, Inc. ("Verizon"), by and through its undersigned counsel, Jackson Lewis P.C., respectfully submits the following Objections to Magistrate Judge Aaron's Report and Recommendation, dated July 11, 2025 which, in relevant part, recommended that Verizon's motion for summary judgment on Plaintiff's discrimination claim under the New York State Human Rights Law (the "NYSHRL claim") be denied. See ECF No. 143 (the "R&R"). For the reasons set forth below, Verizon objects to the R&R as it relates to the NYSHRL claim because the recommendation that there is sufficient evidence for the claim to survive is based on: (1) internal contradictions within the R&R itself (*i.e.*, the R&R previously conceding that the only purported comparators, Ronald Williams and Carlton Evans, cannot be comparators); and (2) reliance on inadmissible evidence based on a misunderstanding of Verizon's arguments against the admissibility of purported evidence (*i.e.*, four declarations consisting of barebones conclusory statements that, even if true, do not establish Verizon enforced its "zero-tolerance" policy based on race).

## PRELIMINARY STATEMENT

On April 6, 2021, Plaintiff's colleague, Amy Williamson, contacted Plaintiff on his company-provided phone to inquire into his estimated time of arrival at a scheduled work appointment. Plaintiff answered this call while he was engaged in another phone call on his personal phone. With Ms. Williamson on the line, Plaintiff uttered, "Stop being a fucking ['full n-word']" along with other race-based comments. Ms. Williamson immediately reported Plaintiff's use of the "full n-word" to her supervisor. After a thorough investigation, which included Plaintiff's own admission to using such hate speech, Verizon determined that Plaintiff used the "full n-word" and terminated his employment consistent with its enforcement of its anti-

discrimination and anti-harassment policy.

In this litigation, Plaintiff now attempts to paint his story as one of "reverse discrimination" in violation of the NYSHRL. Yet, the undisputed admissible evidence exchanged during discovery and at summary judgment conclusively establishes that Verizon does not tolerate the use of racial or harassing language, and that Verizon has routinely terminated the employment of employees who it determined violated the anti-discrimination and anti-harassment policy of the Code of Conduct (unless such termination would violate the law, such as the National Labor Relations Act). Plaintiff is simply another example of Verizon's consistent enforcement of the "zero-tolerance" policy. The R&R incorrectly found that an issue of fact existed regarding Verizon's robust, consistent and non-discriminatory enforcement of its "zero-tolerance" policy, despite the lack of suitable comparators or any admissible evidence supporting Plaintiff's race discrimination claim.

Specifically, while the R&R provided a thorough point-by-point legal analysis upon recommending dismissal of Plaintiff's hybrid § 301/duty of fair representation claim, the shorter analysis of the NYHSRL claim fails to properly address two crucial dispositive points Verizon raised in his moving papers that require dismissal of this claim as a matter of law. In recommending that Plaintiff's NYSHRL claim should survive, the R&R incorrectly gave credence to purported evidence relating to two groups of individuals:

- Two employees who are not similarly situated to Plaintiff (*i.e.*, Ronald Williams and Carlton Evans), and who the R&R correctly pointed out in dismissing the hybrid § 301/duty of fair representation claim do not demonstrate that Verizon failed to follow its "zero-tolerance" policy; and

- Four declarations from former Field Technicians who allegedly last worked for Verizon *as far back as 15 years ago* which proffer barebones conclusory statements that are inadmissible and, nevertheless, do not discuss Verizon's decision to enforce

2

its "zero-tolerance" policy upon investigating the use of racial language.

To defeat summary judgment, Plaintiff must "proffer admissible evidence that sets forth specific facts showing a genuinely disputed factual issue that is material under the applicable legal principles." Henvill v. Metro. Transp. Auth., No. 22-2731-cv, 2023 U.S. App. LEXIS 29479, at *2 (2d Cir. Nov. 6, 2023). None of this "evidence" proffered by Plaintiff can create a genuine issue of material fact as to whether Verizon enforces the "zero-tolerance" policy without regard to race. Accordingly, in analyzing the NYSHRL claim, this Court should reject the R&R's reliance on the improper comparators and inadmissible and irrelevant conclusory declarations.

Indeed, upon this Court reviewing the matter, it should conclude that the R&R (1) improvidently neglected its clear rationale concerning purported comparators Ronald Williams and Carlton Evans discussed in its rejection of the hybrid § 301/duty of fair representation claim; and (2) inappropriately analyzed the admissibility of four declarations solely on whether the declarations were based on personal knowledge and *not* whether they contained inadmissible conclusory statements that runs afoul of the Federal Rules of Civil Procedure for submissions at the summary judgment stage. Thus, Verizon respectfully requests that its Objections to the R&R be sustained, the R&R be modified with respect to the NYSHRL claim, and Verizon's Motion for Summary Judgment be granted in its entirety with prejudice.

## ARGUMENT

### POINT I

### STANDARD OF REVIEW

With respect to dispositive motions under Rule 72(b) "[w]here a party makes a 'specific written objection' . . . [to a R&R], the district court is required to make a *de novo* determination

3

regarding those parts of the report." Cespedes v. Coughlin, 956 F. Supp. 454, 463 (S.D.N.Y. 1997) (quoting United States v. Raddatz, 447 U.S. 667, 676, (1980); see also LLC v. Doe 3, 604 F.3d 110, 116 (2d Cir. 2010); Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).[1] *De novo* review applies only to "any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

The findings and recommendations of a magistrate judge "need not be automatically accepted by the district court." Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989). A district judge may accept, set aside, or modify, in whole or in part, the findings and recommendations of the magistrate judge as to such matters. See Fed. R. Civ. P. 72(b); see also Idlisan v. Mt. Sinai Med. Ctr., No. 12-cv-8935 (PAC)(RLE), 2015 U.S. Dist. LEXIS 3241, at *3-4 (S.D.N.Y. Jan. 9, 2015). Thus, in completing its *de novo* review, the Court must "'give fresh consideration to those issues to which' the [d]efendant objects, and it must 'examine the entire record . . . mak[ing] an independent assessment of the magistrate judge's factual and legal conclusions.'" Patton v. Ford Motor Co., No. 14-CV-0308-RJA-HBS, 2017 U.S. Dist. LEXIS 76148, at *4-5 (W.D.N.Y. May 18, 2017) (citations omitted) (sustaining objections to the R&R and granting the defendant's motion for summary judgment); see also Idlisan, 2015 U.S. Dist. LEXIS 3241, at *10 (declining to adopt the report and recommendation's findings and granting defendant's motion for summary judgment because the plaintiff "failed to meet his burden under the final stage of the McDonnell Douglas analysis that the employment [action] was a pretext for discrimination").

Here, a *de novo* review of the R&R (or even a "clear error" review) should unequivocally find that the R&R erred in finding that Plaintiff's NYSHRL claim should survive

---

[1] Verizon recognizes that, where the objecting party makes "general or conclusory objections, or objections which merely recite the same arguments presented to the [M]agistrate [J]udge," a "clear error" standard is used. Caldarola v. Town of Smithtown, No. 09-CV-272 (SJF)(AKT), 2011 U.S. Dist. LEXIS 37280, at *1 (E.D.N.Y. Apr. 4, 2011).

4

summary judgment.

## POINT II

## VERIZON'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S NYSHRL RACE CLAIM SHOULD HAVE BEEN GRANTED

The R&R erred in finding that Verizon's motion for summary judgment should be denied with respect to the NYSHRL claim on the basis that a reasonable jury could find that Plaintiff satisfied his burden under the McDonnell Douglas test. The R&R wrongly reasoned that Plaintiff could satisfy his *prima facie* case at the outset, and thereafter rebut Verizon's legitimate non-discriminatory reason for terminating his employment because:

> [a]lthough it is a close call, the Court finds that, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Verizon's zero tolerance policy was applied differently based on race and that race played some role in Plaintiff's termination.

(R&R, at p. 23). In reaching its conclusion, the R&R improperly relied upon: (1) inappropriate comparators; and (2) inadmissible evidence. Without such reliance, it is clear that no reasonable jury could find in Plaintiff's favor.

### A. A Reasonable Jury Could Not Find That Plaintiff Identified Similarly Situated Employees Whom He Was Treated "Less Well" Than

While Verizon acknowledges that whether employees are similarly situated is typically a question for the jury, "a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." Broich v. Inc. Vill. of Southampton, 462 F. App'x 39, 42 (2d Cir. 2012). Here, Plaintiff only identifies two purported similarly situated employees who he alleges were treated better than him: Ronald Williams and Carlton Evans. However, as the R&R in fact *recognized* in deciding the hybrid § 301/duty of fair representation claim in favor of Defendants (R&R, at pp. 18-19), neither of these employees are

5

similarly situated to Plaintiff.

### 1. The R&R Contradicts Its Own Finding That Ronald Williams Is Not Similarly Situated to Plaintiff

While the R&R asserts in connection with the NYSHRL claim that a reasonable jury could find that Mr. Williams is similarly situated to Plaintiff because Mr. Williams "was subject to the same Code of Conduct and engaged in comparable conduct" (R&R, at p. 22), a jury is unnecessary when a Court can reach a legal conclusion that disposes the claim. This Court can clearly do just that here because the R&R rejected Plaintiff's similarly situated theory as to Mr. Williams merely four pages earlier. (R&R, at p. 18). Indeed, in analyzing the hybrid § 301/duty of fair representation claim and dismissing such claim, the R&R reasoned:

> Plaintiff's argument that his case is analogous to that of Williams because both men were off Verizon time and property (see Pl.'s Reply at 8) is *misplaced* because there is no evidence that Verizon reached its decision on that basis. Rather, Verizon determined that Williams violated the Code of Conduct but did not discipline him because of its determination that doing so would violate the National Labor Relations Act. (Rocco Decl. ¶¶ 44-46.). Thus, his case *does not suggest* that Verizon did not have a zero-tolerance policy.

(R&R, p. 18 (emphasis added)).

Dispositively, the R&R has already concluded that, as a matter of law, Plaintiff and Mr. Williams are *not* similarly situated given the fact that Mr. Williams' utterance of the "full n-word" occurred during a union meeting where, in his capacity as shop steward, he addressed an issue solely among members of the Union. On the other hand, Plaintiff admittedly used the "full n-word" in a way that permeated into the workplace that was not protected under any law. (R&R, at p.18). However, in analyzing the NYSHRL claim, the R&R is inconsistent and contradicts itself by wholly disregarding its previous finding that Mr. Williams did not engage in

6

comparable conduct. It is clear that Mr. Williams' conduct in a union meeting was protected under the National Labor Relations Act (as acknowledged by the R&R). This distinction between Mr. Williams' conduct and Plaintiff's conduct precludes a reasonable jury from finding that Plaintiff was similarly situated to Mr. Williams. Thus, Plaintiff cannot use Mr. Williams as a comparator to support a *prima facie* case for his NYSHRL claim.

### 2. The R&R Similarly Concedes That Carlton Evans Is Not Similarly Situated To Plaintiff

Similar to Mr. Williams, the R&R properly determined Mr. Evans indisputably did not engage in any conduct, let alone similar conduct to Plaintiff, and could not be a valid comparator. (R&R, at pp. 18-19) ("With respect to Evans, the Union submitted evidence that it could not corroborate that Evans used a racial slur . . . and, thus, this case also does not suggest that Verizon did not actually have a zero-tolerance policy. . . .").[2] To the extent this Court wishes to consider Mr. Evans as a comparator despite him not even being an employee of either of the Defendants, Plaintiff's arguments fail for the reasons Verizon asserts in its moving papers. See ECF No. 121, at ¶¶ 10-14; ECF No. 122, at pp. 11-13; ECF No. 133, at p. 6. Likely for these reasons, the R&R is silent with respect to Mr. Evans in connection with Plaintiff's NYSHRL claim.

\*       \*       \*

Accordingly, Plaintiff has not established any comparators to satisfy his *prima facie* burden for a NYSHRL claim to survive. See, e.g., O'Neill v. Newburgh Enlarged City Sch. Dist., No. 24-2007-cv, 2025 U.S. App. LEXIS 13338, at \*7 (2d Cir. June 2, 2025) ("Because the

---

[2] The R&R also incorrectly states that the Union submitted such evidence relating to Verizon's determination that Mr. Evans did not use a racial slur. However, it was Verizon's submission of the Declaration of Luanne Francis in opposition to Plaintiff's motion for summary judgment that contained this information. See ECF No. 121.

7

record is devoid of any direct evidence of discrimination, [plaintiff's] failure to identify an appropriate comparator is fatal to her claim"). For this reason alone, this Court should therefore grant Verizon's summary judgment motion in its entirety.

### B. A Reasonable Jury Could Not Find That Verizon's Decision To Terminate Plaintiff's Employment Was Based On Race Or That Verizon Inconsistently Enforces Its "Zero-Tolerance" Policy Because There Is No Admissible Evidence In Support of Plaintiff's Theory

As Mr. Williams' and Mr. Evans' situations were the only *admissible* evidence upon which Plaintiff could satisfy his burden under the third prong of the McDonnell Douglas test, Plaintiff cannot succeed on his NYSHRL race claim.[3] The R&R, however, improperly considered the inadmissible declarations of four Field Technicians in determining that Plaintiff could sustain his burden. But, it is clear as a matter of law that such conclusory and barebones declarations are not sufficient to defeat summary judgment.

Instead of addressing Verizon's argument that the conclusory nature of these four declarations renders them inadmissible, the R&R misinterprets Verizon's evidentiary objection to them. As noted in Verizon's moving papers, Verizon challenges their admissibility as conclusory because of the sparse generalized statements submitted therein. See, e.g., ECF No. 134, at ¶ 41; see also ECF No. 133, at pp. 10-11 (collecting cases highlighting that conclusory allegations, without more, fail to satisfy Fed. R. Civ. P. 56(e) and are insufficient to defeat summary judgment). The R&R, however, overlooked this dispositive argument and erroneously found that the declarations are admissible because they are based on "personal knowledge." (R&R, at p. 23). While they may be based on personal knowledge, Verizon does not (for the purposes of its motion) object to these declarations on that basis. Instead, Verizon argues that

---

[3] As noted in Verizon's moving papers, Plaintiff improperly relied only upon inadmissible allegations in an unsigned Verified Complaint when advancing his arguments concerning Mr. Evans. As it was abundantly clear that Mr. Evans is an improper comparator here, it was actually Verizon that provided admissible evidence this Court could rely upon concerning Mr. Evans to grant its motion for summary judgment.

8

they are inadmissible as conclusory due to the declarants' collective failure to provide any detail or other concrete factual support of disparate treatment. See Fed. R. Civ. P. 56(c) ("An affidavit or declaration used to support or oppose a motion must . . . set out facts *that would be admissible in evidence*") (emphasis added); Fed. R. Civ. P. 56(e)(3) ("If a party fails to *properly* support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it") (emphasis added).

The requirement that declarations contain sufficient evidence to defeat summary judgment has been consistently endorsed by courts within this jurisdiction. See, e.g., D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful"). For example, in Schwapp v. Town of Avon, the Second Circuit affirmed the district's court's refusal to rely on an affidavit that simply stated "Howe [a fellow employee] was *always* making racial slurs about minorities." 118 F.3d 106, 111 (2d Cir. 1997) (emphasis added). The Second Circuit held that the district court properly rejected the "[employees'] affidavit[] because it found the affidavit[] virtually devoid of any specific instances of racially discriminatory conduct based upon personal knowledge, but *replete with conclusory allegations* of racism . . ." Id. (emphasis added); see also James v. RD Am., LLC, No. 3:16-cv-1445 (VAB), 2019 U.S. Dist. LEXIS 34394, at *36 (D. Conn. Mar. 5, 2019).

The R&R's treatment of these declarations is wholly improper as they are akin to the conclusory affidavit submitted in Schwapp. Each declaration follows the same format of providing some employment history and then only one conclusory relevant paragraph that

9

Plaintiff seeks to use to support his claims. Thus, the only information that Plaintiff attempts to submit to defeat summary judgment are the following conclusory statements that these four individuals heard unknown African American employees generally use racial slurs and other racially charged language:

> **McCardle:** At all these locations I observed African American employees conspicuously using the [full n-word] in the presence of supervisors. I also witnessed African American employees refer to Caucasian employees as "cracker" and "white boy" in the presence of 2 supervisors. Yet none of the persons saying these words were disciplined in any way, much less terminated. (ECF No. 113, at ¶ 6).
>
> **Sheridan:** I regularly and routinely heard African American employees conspicuously using the [full n-word] at the Nepperhan Avenue garage and in the parking lot. I know that none of these employees was ever disciplined in any way, much less terminated, because Verizon continue to employ them, and they continued using the [full n-word] with impunity. (ECF No. 114, at ¶ 3).
>
> **Tornatore:** I regularly and routinely heard African American employees use [full n-word] in the presence of supervisors at Nepperhan Avenue. I know that none of those who said these words was ever disciplined in any way, much less terminated, because Verizon continued to employ them, and they continued using the [full n-word] cavalierly in the garage. (ECF No. 115, at ¶ 3).
>
> **Rodriguez:** At Nepperhan Avenue many of the African American Field Technicians and supervisors used to congregate in a room known as the 'Black Room.' During each of' my thirteen years at Nepperhan Avenue I overheard these Field Technicians and supervisors using the [full n-word] and [full s-word] with impunity whenever was in the 'Black Room.' None of these persons were ever disciplined in any way for using this language in the garage. (ECF No. 116, at ¶ 5).[4]

Notably, the declarations fail to even identify which employees used this language, whether such information was reported to Verizon as required by the Code of Conduct (which

---

4   The "full s-word" is a derogatory term for Hispanics and can be referenced in Mr. Rodriguez's declaration.

these individuals do not report doing) or which supervisors supposedly failed to take action, and whether Verizon had the ability to investigate or determine whether to issue discipline (which is the crux of the disparate treatment issue here).[5] Further demonstrating the flaws of relying upon these declarations as evidentiary support, Rodriguez's assertions discuss events supposedly occurring *15 years ago or more*, thus occurring prior to the effective date of the operative Code of Conduct. Similarly, the remaining statements are so barebones that they could also be discussing alleged events that occurred prior to the operative Code of Conduct containing the "zero-tolerance" policy at issue here. Therefore, none of these statements can be used as admissible evidence. Nevertheless, none of the declarations include an allegation of such purported comments being reported to Verizon or any subsequent investigation and its conclusion, which is the crux of Plaintiff's disparate treatment issue.

Simply put, these statements have no sufficient detail that would allow the court to appropriately rely on them to advance Plaintiff's NYSHRL claim. Dispositively, merely asserting general statements such as "regularly" or "routinely" hearing comments are the *exact* conclusory allegations that fail to pass muster under Fed. R. Civ. P. 56(c) and (e). See Schwapp, supra; James v. RD Am., LLC, 2019 U.S. Dist. LEXIS 34394, at *36 ("Because the conclusory and speculative portions of this affidavit would be inadmissible at trial, they cannot support denial of a motion for summary judgment now").

In recommending denial of Verizon's motion for summary judgment on Plaintiff's NYSHRL race claim, the R&R improperly relied on the conclusory statements contained in the declarations. (R&R, at p. 23). As neither Mr. Williams nor Mr. Evans are proper comparators because their cases do not evidence inconsistent treatment of Verizon's "zero-tolerance" policy,

---

[5] Plaintiff is likely attempting to argue that some supposed statements were made in the presence of managers to circumvent the fact that nobody reported these issues to Verizon but, again, the declarations offer no concrete facts to allow this Court to accept such statements as admissible evidence.

Plaintiff's NYSHRL claim cannot proceed as a matter of law if the only remaining evidence supporting it (the declarations) are inadmissible. This Court should therefore disregard the conclusory statements in the declarations as inadmissible evidence and, because there is no further support for Plaintiff's NYSHRL claim, grant Verizon's motion for summary judgment in its entirety.

## CONCLUSION

Plaintiff's opposition to Verizon's motion for summary judgment fails to provide "significant probative evidence demonstrating that a factual dispute exists, [and, as such], summary judgment is appropriate." Morgan v. Cnty. of Nassau, No. 13-CV-06524 (JMA)(GRB), 2017 U.S. Dist. LEXIS 22992, at *19 (E.D.N.Y. Feb. 17, 2017). Thus, there is no factual dispute concerning Verizon's enforcement of its "zero-tolerance" policy requiring this claim to advance to trial. Upon only analyzing the admissible evidence, Plaintiff presented no valid comparators and failed to address Verizon's assertion that it terminates all similarly situated individuals who used the "full n-word" in violation of its anti-discrimination and anti-harassment policy. While Verizon supported its position throughout is moving papers with numerous *actual* and *admissible* examples that it consistently enforces its "zero-tolerance" policy, Plaintiff relied upon dissimilar employees and conclusory, inadmissible declarations that do not raise material facts sufficient as a matter of law to defeat summary judgment.

For the reasons outlined above, Verizon objects to the R&R and respectfully asks this Court to decline to adopt the portion of the R&R recommending denial of summary judgment with respect to Plaintiff's NYSHRL race claim, and grant Verizon's motion for summary judgment in its entirety.

Dated: New York, New York
       July 24, 2025

                              Respectfully submitted,

                              JACKSON LEWIS P.C.
                              *ATTORNEYS FOR DEFENDANT*
                              *VERIZON NEW YORK, INC.*
                              58 South Service Road, Suite 250
                              Melville, New York 11747
                              (631) 247-0404

                  By:    *s/ Ryan C. Chapoteau*
                              Ryan C. Chapoteau, Esq.
                              Cliff LaFemina, Esq.